OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

April 28, 1999

The Honorable Elton Bomer
Secretary of State of Texas
P.O. Box 12697
Austin, Texas 78711-2697

Opinion No. JC-0038

Re: Authority of the Secretary of State to adopt rules restricting use of state funds for voter registration under chapter 19 of the Election Code (RQ-524)

Dear Secretary Bomer:

Your predecessor asked whether the Secretary of State may adopt rules that prohibit the use of state funds available under chapter 19 of the Election Code to pay for costs associated with the normal operations of the voter registrar's office. We believe that the Secretary of State has the authority to adopt and has appropriately exercised that authority by adopting rules prohibiting use of chapter 19 funds for the normal operations of the voter registrar's office.

Chapter 19 of the Election Code provides that each county voter registrar is entitled to twenty-five cents from state funds for each new registration; forty cents for each canceled and updated registration; and, in each even-numbered year, forty cents multiplied by the difference between the number of registered voters and the number of initial registrations certified for the two previous voting years. TEX. ELEC. CODE. ANN. § 19.002(a) (Vernon Supp. 1999). After June 1 of each year, the Comptroller of Public Accounts is to issue to each registrar a warrant in an amount that does not exceed the amount the registrar is entitled to under the above provisions if the registrar submits a voucher that is approved by the Secretary of State. *Id.* § 19.002(b). The Secretary of State is directed to prescribe the "procedures necessary to implement this subsection [relating to the issuance of the warrants]." *Id.* Additionally, the Comptroller of Public Accounts may not issue a warrant if she receives notice from the Secretary of State that the registrar is not in substantial compliance with the reporting requirements of the registration service program. *Id.* 19.002(d).[1]

---

[1]Section 19.002(d) and section 18.064 provide that the Comptroller of Public Accounts may not issue a warrant for chapter 19 funds if she is notified by the Secretary of State that the registrar is not in "substantial compliance" with sections 14.025, 16.032, 18.042, or 18.063 or with the rules implementing the registration service program. Section 16.032 requires the registrar to cancel a voter's registration in certain circumstances; section 18.042 requires filing before the biannual primary and general elections a statement of the number of registered voters; and section 18.063 requires that the registrar file with the Secretary of State information as to new, changed, and canceled registrations. Section 14.025, which required filing biannually information as to renewal voter registration certificates mailed but returned to the registrar because the voter was no longer at the mailing address of record, was repealed in 1995. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 797, § 44, 1995 Tex. Gen. Laws 4153, 4168.

Section 19.004 provides that "[s]tate funds disbursed under this chapter may be used only to defray expenses of the registrar's office in connection with voter registration, including additional expenses related to implementation of the National Voter Registration Act of 1993 (42 U.S.C. Section 1973gg et seq.)."[2] *Id.* § 19.004. That section also directs the Secretary of State to "specify the procedures that result in additional expenses and that are required to implement that federal law." *Id.* Significantly, section 19.006 provides that "[t]he commissioners court may not consider the availability of state funds under this chapter in adopting the county budget for the office of the voter registrar." *Id.* § 19.006 (Vernon 1986).

The rules at issue provide in pertinent part that "[c]hapter 19 funds may be used to pay for any item or service designed to increase the number of registered voters in the state, maintain and report an accurate list of the number of registered voters, and/or increase the efficiency of the voter registration office[,]" and, conversely, that the funds "may not be used to fund the normal day-to-day operation of the voter registrar's office." 1 TEX. ADMIN. CODE §§ 81.13, .14 (West 1998); *see also id.* §§ 81.12 (county must provide for normal operations and chapter 19 funds shall be expended exclusively for voter registration items); 81.28 (expenses related to implementation of federal National Voter Registration Act). The normal day-to-day operation, the rules provide, must be funded by "the Commissioners Court when adopting the budget for voter registration in their county." *Id.* § 81.14. "Normal day-to-day operations" means "any duty required to be performed by counties under the Texas Election Code." *Id.* Examples of the statutory duties include without limitation "the physical acceptance and processing of voter registration certificates and renewals under Chapter 13 [of the Election Code], notices and corrections made under Chapter 15 and Chapter 16 and the processing and cost of supplying voters lists under § 18.001 [of the Election Code]." *Id.*

In evaluating the Secretary of State's authority to promulgate these rules, we consider two factors: (1) whether the Secretary of State has express or implied authority by statute to adopt such rules; and (2) whether he has exceeded that authority in adopting the specific rules. *See Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992) (agency can adopt only rules authorized by and consistent with its statutory authority).

First, we address the Secretary of State's authority to adopt administrative rules with respect to chapter 19 funds. An agency may only adopt rules as authorized by its statutory authority. *Lone Star*, 844 S.W.2d at 685. Its authority to promulgate rules may be expressly conferred on it by statute or implied from other powers and duties given or imposed by statute. *Id.* We note that the Secretary of State does not have express general authority to adopt rules. Nor does he have express

---

[2]The National Voter Registration Act of 1993, 42 U.S.C.A. §§ 1973gg-1973gg-10 (West 1998), generally requires that government offices provide registration materials, and specifically provides for updating addresses for voter registration purposes in accordance with driver's license information updates. The law also prevents cancellation for two general elections of registrations due to voter failing to update address information. The 1995 Texas legislation, which amended section 19.004 of the Election Code with reference to the new federal law, also made extensive changes to other provisions of the Election Code to bring state law into compliance with the new federal requirements. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 797, § 32, 1995 Tex. Gen. Laws 4153, 4162.

authority to adopt rules relating to the expenditure of the chapter 19 state funds. But he does have authority from which such rule-making authority specifically relating to chapter 19 funds may be inferred.

The Secretary of State is the chief election officer of the state. TEX. ELEC. CODE ANN. § 31.001 (Vernon 1986). He is given broad powers to "obtain and maintain uniformity in the application, operation, and interpretation of [the Election] code" and in performing this duty to "prepare detailed and comprehensive written directives and instructions relating to and based on this code." *Id.* § 31.003. More specifically, he is directed to oversee chapter 19 state funds, *see id.* § 19.002(b), (d) (Vernon Supp. 1999), and to prescribe procedures to implement the disbursement of such funds, *id.* §§ 19.002(b), (d), .004. Given the Secretary of State's express powers to interpret the election laws generally and to oversee chapter 19 state funds specifically, we conclude that he has the implied authority to adopt administrative rules with respect to the state funds. *See Gulf Land Co. v. Atlantic Refining Co.*, 131 S.W.2d 73, 82 (Tex. 1939) (implying Railroad Commission's rule-making authority from its authority to execute and enforce oil and gas conservation statutes). We emphasize that our opinion as to the Secretary of State's implied rule-making authority is limited to the subject of this request, namely, chapter 19 funds.

Next, we address whether the Secretary of State exceeded his rule-making authority in promulgating rules specifically prohibiting use of chapter 19 funds for the normal operations of the voter registrar's office. An agency may only adopt rules as are consistent with its statutory authority. *Lone Star*, 844 S.W.2d at 685. In deciding whether an administrative agency has exceeded its statutory authority, the determinative factor is whether the rule's provisions are in harmony with the general objectives of the particular statute. *Id.* It is the opinion of this office that the rules are consistent with the Secretary of State's authority under chapter 19.

Section 19.004 provides that state funds disbursed to county registrars may only be used "to defray expenses of the registrar's office in connection with voter registration." TEX. ELEC. CODE ANN. § 19.004. This provision by its terms does not prohibit the use of such funds to pay for expenses associated with the normal operations of the registrar's office. However, section 19.004 cannot be viewed in isolation but must be considered in conjunction with other provisions of chapter 19 to determine the legislature's intent. *See Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994) (primary consideration in construing statute is to effect legislature's intent); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978) (court must look to entire act, not just one provision, to determine legislative intent; one provision cannot be given meaning out of harmony or inconsistent with other provisions even though susceptible of such construction standing alone). Section 19.006 prohibits the commissioners court from considering the state funds in adopting the county budget for the voter registrar's office. Section 19.002(b) directs that the state funds be paid directly to the voter registrar's office rather than to the county treasury. As explained below, the enactment of these provisions as part of the substantive recodification of the Election Code in 1985 indicates that the legislature intended to limit the purposes for which chapter 19 funds could be used. *See* TEX. GOV'T CODE ANN. § 311.023(2), (4) (in construing statute, may consider circumstances under which statute or former statutory provision enacted).

Before 1985, the state funds could be used for any reasonable expenses of the registrar's office associated with voter registration. The legislature adopted the predecessor provisions of the current voter registration system in 1966, following the United States Supreme Court's declaration in *Harper v. Virginia State Board of Elections*, 383 U.S. 663 (1966), that the poll tax was unconstitutional. Under article 5.19b of the former Election Code, the Comptroller of Public Accounts issued annual warrants to each county in the amount of twenty-five cents for each voter registered, and the proceeds of the warrants were to be "deposited in the county treasury for general revenue purposes."[3] In 1971, the legislature increased the warrant amounts and directed that the proceeds be deposited in a "special fund" in the county treasury "to be used for defraying the expenses of the [voter] registrar's office in the registration of voters," and further directed that none of the monies were to be retained as "fees of office" by registrars in counties where officials were compensated on a fee basis.[4] In 1977, the legislature amended former article 5.09a to provide that "[t]he expenses of the registrar in excess of the reimbursements received from the state under [article 5.19b] shall be borne by the county."[5] In short, the state funds were provided to the counties to replace the poll tax and to partially reimburse the counties for the expenses of the voter registrar's office that they would have otherwise been required to fund. Accordingly, in 1983, Attorney General Opinion JM-61 construed the provisions then in effect to permit the use of the funds to defray *any* reasonable expenses incurred by the registrar's office in the registration process.

But the substantive revisions made to these provisions in 1985 as part of the substantive recodification of the Election Code evidence a legislative intent to depart from the way state funds for voter registration had been handled under the prior law.[6] Most notably, the provision codified as section 19.006, and headed "State Funds Not Part of County Budget," directs that "[t]he commissioners court may not consider the availability of state funds under this chapter in adopting the county budget for the office of the voter registrar." TEX. ELEC. CODE ANN. § 19.006 (Vernon 1986). We read this provision as indicating a legislative understanding that the funding of the registrar's office in amounts sufficient to enable that office to perform its minimal statutory duties is the responsibility of the county, *see, e.g.*, Tex. Att'y Gen. Op. No. JM-770 (1987) at 3 (citing authorities for proposition that commissioners court must fund reasonable expenses of county offices), and a legislative intent that chapter 19 funds not be used for such basic expenses. *See American Surety Co. of New York v. Axtell*, 36 S.W.2d 715, 719 (Tex. 1931) (legislature presumed

---

[3]*See* Act of Feb. 22, 1966, 59th Leg., 1st C.S., ch. 1, sec. 2, § 51b, 1966 Tex. Gen. Laws 1, 9, *amended by* Act of May 31, 1971, 62d Leg., R.S., ch. 827, § 13, 1971 Tex. Gen. Laws 2509, 2522, *and* Act of May 23, 1975, 64th Leg., R.S., ch. 296, § 13, 1975 Tex. Gen. Laws 750, 761, *repealed by* Act of May 13, 1985, 69th Leg., R.S., ch. 211, § 9, 1985 Tex. Gen. Laws 802, 1076.

[4]Act of May 31, 1971, 62d Leg., R.S., ch. 827, § 13, 1971 Tex. Gen. Laws 2509, 2522.

[5]Act of May 28, 1977, 65th Leg., R.S., ch. 609, § 1, 1977 Tex. Gen. Laws 1497, 1498.

[6]Unlike many of the codes adopted in the course of the state's ongoing program of statutory revision, the Election Code of 1985 made numerous substantive changes to prior law. *See* Act of May 13, 1985, 69th Leg., R.S., ch. 211, § 1, 1985 Tex. Gen. Laws 802. The provisions regarding state funding for voter registration, found principally in article 5.19b of the former code, were located in Election Code chapter 19. *See id.* at 835-36.

to have intended some change to existing law when amendment was enacted and effect must be given to amendment).

Consistent with this interpretation, the provisions of former article 5.09a—that the expenses of the registrar's office in excess of the reimbursements received from the state shall be borne by the county—did not reappear in the 1985 Election Code. The scheme suggested by these former provisions, that state funds would be used to finance, or "reimburse" the county for, the same expenses of the registrar's office that county funding would otherwise be required to meet, finds no support in the current provisions. Also, the current provisions direct that the warrants issued by the Comptroller of Public Accounts be paid directly to the voter registrar's office. This is a change from the prior law, which directed that the state funds be paid to the county treasury, and a further indication that the chapter 19 funds are not intended to be for the same purposes as county funds appropriated to the registrar's office from the county treasury. TEX. ELEC. CODE ANN. § 19.002(b) (Vernon Supp. 1999).

Our interpretation that after the 1985 amendments to chapter 19 state funds may not be used to pay for the basic operations of the voter registrar's office is supported by the Secretary of State's long-standing construction of these amendments. Under the law in effect before the adoption of the current Election Code in 1985, the Office of the Secretary of State had opined, as had this office in Attorney General Opinion JM-61, that state funds disbursed to counties for voter registration could "be used for any activity related to voter registration." Secretary of State Election Law Opinion JWF-7 (1983) at 2. However, since the adoption of the new Election Code in 1985 containing the provisions discussed above, all secretaries of state have consistently taken the position that basic operation expenses of the voter registrar's office must be paid from the county budget, and that chapter 19 state "funds are to be used to enhance the voter registration functions of the voter registrar's office."[7] In 1991, the Secretary of State adopted detailed rules to such effect. *See* 16 Tex. Reg. 2825 (1991) (adopting 1 TEX. ADMIN. CODE § 81.11) (proposed July 20, 1988) (Secretary of State's Office). These rules were amended, effective October 1, 1995. *See* 20 Tex. Reg. 7277 (1995) (repealing former 1 TEX. ADMIN. CODE § 81.11 and adopting new 1 TEX. ADMIN. CODE §§ 81.11-.29). The amended rules continue to embody that position. *See* 1 TEX. ADMIN. CODE §§ 81.12-.14. The Secretary of State's long-standing interpretation that chapter 19 funds may not be used to pay for the basic operations of the voter registrar's office is entitled to serious consideration given that it is consistent with the legislative intent to limit the use of the state funds as evidenced by the post-1985 amendments to chapter 19. *See Texas Water Comm'n v. Brushy Creek Mun. Util.*

---

[7]Directive Regarding Voter Registration Financing Under Chapter 19 of the Texas Election Code 7 (Tex. Office of the Secretary of State Sept. 29, 1989), *id.* at 1 (emphasis removed) (also directing that state funds not to be used to fund day-to-day operations of registrar's office); *accord* Directive, Disbursement of Funds Under Chapter 19, Texas Election Code 1 (Tex. Office of the Secretary of State June 28, 1988). The directives go on to distinguish between particular expenditures payable with state funds—for example, costs associated with temporary, part-time, and seasonal contract personnel; certain travel expenses; certain outlays for equipment—and those which are the county's responsibility—that is, costs of performing the office's statutorily required voter registration duties. *See also* Memorandum, Addendum to June 28, 1988 Directive Regarding Disbursement of Funds Under Chapter 19, Texas Election Code (Tex. Office of the Secretary of State July 8, 1988) (superseding "travel" portion of earlier directive).

*Dist.*, 917 S.W.2d 19, 21 (Tex. 1996) (construction of statute by agency charged with its execution entitled to serious consideration unless clearly inconsistent with legislative intent).

Finally, in regard to the Secretary of State's interpretation that state funds may not be used for basic operations of the registrar's office, we observe that the legislature specifically revisited chapter 19 in 1989, 1993, 1995, and 1997,[8] but did not amend the statute to provide otherwise. As indicated above, the Secretary of State's construction has remained the same since 1985. We note that the duration of the construction here is not as long as in the cases in which the Texas courts have applied the doctrine of legislative acquiescence. *See Humble Oil & Refining Co. v. Calvert*, 414 S.W.2d 172, 180 (Tex. 1967) (administrative construction in place for forty-six years of such long-standing that it should not be changed without clear legislative direction); *Fleming Foods of Texas, Inc. v. Sharp*, 951 S.W.2d 278, 281 (Tex. App.–Austin 1997, pet. granted) (legislature's decision not to change law regarding refund claim standing indicates legislative acceptance of Comptroller of Public Account's interpretation in place before 1981 recodification of Tax Code). However, a period of fourteen years with four legislative sessions in which chapter 19 has been reexamined is some evidence that the legislature concurs with the Secretary of State's construction. Accordingly, the legislature's decision not to amend the law with respect to permitted uses of the state funds as relevant here, despite the several amendments over the years to chapter 19, is some evidence of legislative acceptance of the Secretary of State's interpretation. *See Calvert*, 414 S.W.2d at 180 (ambiguous statute construed by proper administrative officers, when re-enacted without any substantial change in verbiage will ordinarily receive same construction); *Sharp*, 951 S.W.2d at 281 (legislature's decision not to change law regarding refund claim standing indicates legislative acceptance of Comptroller of Public Account's interpretation).

In sum, the Secretary of State has implied authority to adopt rules relating to chapter 19 state funds. Consistent with section 19.006 of the Election Code, prohibiting the commissioners court from considering state funds in adopting the county budget for the voter registrar's office, and section 19.002(b), directing that they be paid directly to the voter registrar's office rather than to the county treasury, the Secretary of State has adopted rules prohibiting the use of disbursed funds for the normal day-to-day operations of the voter registrar's office. Because the Secretary of State's

---

[8]*See* Act of May 4, 1989, 71st Leg., R.S., ch. 114, § 5, 1989 Tex. Gen. Laws 472 (amending section 19.002 to provide for Secretary of State's monitoring of registrar's compliance with requirements regarding registrar's filing of statement of number of registered voters with Secretary of State, and providing for withholding of chapter 19 funds in event of noncompliance); Act of May 28, 1993, 73d Leg., R.S., ch. 916, § 21, 1993 Tex. Gen. Laws 3880, 3884 (amending section 19.002 and various provisions of chapter 18, titled "Procedures for Identifying Registered Voters," to allow Secretary of State's withholding state funds from registrar if latter "is not in substantial compliance with Section 14.025, 16.032, 18.042 or 18.063 or with rules implementing the registration service program"); Act of May 27, 1995, 73d Leg., R.S., ch. 797, § 32, 1995 Tex. Gen. Laws 4153, 4162 (adding to section 19.004 stipulation that state funds may be used only to defray registration expenses provision that such expenses include those necessary to comply with National Voter Registration Act of 1993, 42 U.S.C. §§ 1973gg to 1973gg-10); Act of May 16, 1997, 75th Leg., R.S., ch. 454, § 7, 1997 Tex. Gen. Laws 1750, 1751 (amending section 19.001(a) to require registrar to prepare and submit statement to Comptroller of Public Accounts containing number of registrations for which information was updated for previous voting year and section 19.002(a) to decrease state funds for new registrations and provide state funds for updated registrations under section 19.001(a)).

rules prohibiting use of chapter 19 state funds for the normal operations of the county voter registrar's office are consistent with his authority under chapter 19, he has properly exercised his authority in adopting such rules.

## S U M M A R Y

The Secretary of State has authority to adopt rules prohibiting the use of state funds made available under chapter 19 of the Election Code to pay costs associated with the normal operations of the county voter registrar's office.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Sheela Rai
Assistant Attorney General